UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
In re:

BABY BLUE OF JUNCTION, LLC,

               Debtor.

-------------------------------------------------x    **MEMORANDUM AND ORDER**

ESTATE OF LILIAN GOLDMAN and    Case No. 23-CV-1486 (FB)
THE LILIAN GOLDMAN FAMILY,
LLC,

               Appellants,

       -against-

BABY BLUE OF JUNCTION, LLC,

               Appellee.

-------------------------------------------------x

*Appearances:*
*For the Appellants:*                 *For the Appellee:*
ANTHONY J. D'ARTIGLIO      MICHAEL A. KING
Ansell Grimm & Aaron, P.C.       41 Schermerhorn Street, #228
365 Rifle Camp Road            Brooklyn, New York 11201
Woodland Park, New Jersey 07424

**BLOCK, Senior District Judge:**

    At issue in this bankruptcy appeal is the bankruptcy court's order dismissing

the Chapter 11 proceeding of Baby Blue of Junction, LLC ("Baby Blue"), over the

objection of the Estate of Lilian Goldman and The Lilian Goldman Family, LLC

(collectively, "Goldman").  For the following reasons, the order is reversed and the

case is remanded for further proceedings.

# I

Goldman owns commercial property in Corona, Queens.  It leases part of the property to Baby Blue.  Baby Blue, in turn, subleases the premises to an affiliated company owned by its principal.  The subtenant does not pay any rent.

With insufficient liquid assets to pay its rent and other obligations, Baby Blue declared bankruptcy in March 2022.  When it continued to not pay post-petition rent, Goldman moved for an order to compel rejection of the lease (or, in the alternative, granting relief from the automatic stay) and immediate payment of all accrued post-petition, pre-rejection rent.  At a hearing on the motion, the bankruptcy court agreed that Baby Blue "needs to pay post-petition rent."  App. to Appellants' Opening Brief at 116.  When Baby Blue's counsel objected that his client had no income, the court observed that "the premises are being used . . . today" (presumably by the subtenant), and that "an affiliated party transaction with a Chapter 11 debtor, zero rents being collected, . . . doesn't sound like a Chapter 11 debtor that's meeting its obligations to creditors."  *Id.*  It later agreed that Goldman had an unsatisfied administrative expense claim against the estate, *see id.* at 112, and said that "it's a requirement of the case to pay . . . monthly rent so at least do this going forward."  *Id.* at 116.

The bankruptcy court entered an order granting relief from the automatic stay on July 27, 2022.  The following day it ordered Baby Blue to "pay monthly

adequate protection in the form of rent beginning August 2022 as reflected in the record." *Id.* at 49. It later deemed the lease rejected as of October 14, 2022.

Between the declaration of bankruptcy in March and the rejection of the lease in October, almost $200,000 in rent accrued. Baby Blue paid none of it. Instead, it moved to dismiss the bankruptcy. In response, the Subchapter V Trustee (who helps small businesses in Chapter 11 develop a plan of reorganization) stated that Baby Blue "should be paying its admin claims if it wants a dismissal." *Id.* at 104. Baby Blue's counsel agreed and represented that "[a]ll administrative fees will be paid." *Id.* at 54. At the hearing on the motion, however, he stated that the only such expenses were the trustee's fees. Goldman opposed dismissal unless its administrative claim for post-petition, pre-rejection rent was satisfied. It instead proposed converting the case to a Chapter 7 liquidation in which the trustee could pursue the subtenant for unpaid rent.

The bankruptcy court granted the motion to dismiss, somewhat confusingly stating that there was no objection to "the specific relief sought" and that "[t]here's no application for [Goldman's administrative expense claim] on the docket." *Id.* at 181. The only condition was payment of $1,500 to the trustee. This appeal timely followed.

**II**

3

District courts serve an appellate function in bankruptcy cases and "review the bankruptcy court's findings of fact for clear error and its legal determinations de novo." *In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018). Before turning to the merits of the issues in this case, however, it is helpful to begin with a brief overview of bankruptcy law's treatment of commercial leases.

With respect to pre-petition rent claims, commercial landlords are treated much like any other unsecured creditor: they assert their claim, litigate any disputes regarding it (either in an adversary proceeding or in state court), and get in line for their share of whatever the estate can manage, either through liquidation or reorganization.

But because most leases are continuing obligations, rent continues to accrue after the petition is filed. In line with its general goal of placing struggling businesses on sounder footing, bankruptcy law gives the trustee or debtor-in-possession the power to "assume or reject any executory contract of unexpired lease of the debtor." 11 U.S.C. § 365(a). Until that decision is made, "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property." *Id.* § 365(d)(3). This duty—which includes the obligation to pay rent—was added to the Bankruptcy Code in 1984 to correct the perceived unfairness of requiring commercial landlords to continue to allow their tenants to possess the premises

4

pending a decision on assumption or rejection.  *See In re Pudgie's Dev of N.Y, Inc.*, 239 B.R. 688, 692 (S.D.N.Y. 1999).

Certain aspects of the statute are not in dispute.  "When the bankruptcy estate is solvent, the landlord is entitled to immediate payment of rent as it becomes due under the lease."  *Id.*  "However, when there is a risk of insolvency, the effect of requiring immediate payment of the lease obligations is to give lessors a superpriority administrative expense claim," *id.* at 693, in that immediate payment of rent means that the cash might not be available later for administrative claimants and other high-priority creditors.  Most courts have rejected this outcome, holding that "[i]f the bankruptcy estate is insolvent, . . . the landlord is paid with the other administrative claims on a pro rata basis."  *Id.* (collecting cases).

Finally, in addition to an administrative claim, a commercial landlord has other remedies for a tenant's continued default:

> During the post-petition, pre-rejection period, the landlord may move for relief from the automatic stay and evict the debtor-tenant. The landlord may also seek an order directing the debtor-tenant to pay the lease obligations immediately. Finally, the landlord may move for an order to convert the case to one under Chapter 7.

*See id.* at 696.  "What a landlord cannot do is sit idly by and not seek either payment or recovery of the premises by relying on the fact that his contractual rent will be accorded administrative priority."  *Id.* (internal quotation marks omitted).

5

With those general principles in mind, the Court turns to Goldman's specific issues on appeal.[1]

***First,*** Goldman argues that the bankruptcy court erred in not treating the unpaid post-petition, pre-rejection rent as an administrative expense.  This presents an issue of law subject to de novo review.  *See In re Bethlehem Steel Corp.*, 479 F. 3d 167, 172 (2d Cir. 2007).

The record clearly reflects that the bankruptcy court ordered Baby Blue to pay post-petition rent "at least going forward."  There is, to be sure, a somewhat technical—but important—difference between the *obligation* to pay post-petition, pre-rejection rent and the remedy of allowing an administrative expense *claim* if that obligation is breached.  The difference is principally one of timing, but "[t]iming of payment is critical because in many bankruptcy cases, when a claim is paid makes the difference as to whether it will be paid at all."  *In re Pudgie's Dev.*, 239 B.R. at 692 (internal quotation marks omitted).  But the case law set forth above makes it plain that the usual procedure is to allow the administrative expense claim, *see id.*,[2] and the bankruptcy court agreed with Goldman's counsel that there would be such a claim if rent was not paid on an ongoing basis.

---

[1]For the sake of simplicity, the Court has condensed Goldman's four issues on appeal into two.

[2]Courts have disallowed administrative expense claims for rent where the

It is unclear from the record exactly why the court then deviated from that procedure in granting the motion to dismiss.  It apparently believed that Goldman had not objected to the motion or "made an application for that relief on the docket."  App. to Appellants' Opening Br. at 181.  But that seems to have been a misunderstanding of the record based on Baby Blue's statement that it would pay all administrative expenses as a condition of the dismissal.  Given that (perhaps unintentional) misrepresentation, there was no reason for Baby Blue to object or raise the issue until it became clear at the hearing on the motion that Baby Blue considered the only administrative expense to be the trustee's fee.  Once that became known, Goldman very clearly objected and argued its position.  In any event, "[t]he majority of courts agree that Code § 365(d)(3) entitles a lessor to an administrative expense claim for the monies due under the lease without the necessity of a hearing to determine whether they constitute actual and necessary costs and expenses associated with preserving the estate."  *In re New Almacs, Inc.*, 196 B.R. 244, 248 (Bankr. N.D.N.Y. 1996).

Indeed, Baby Blue does not even bother to dispute that the unpaid rent should have been an administrative expense.  Instead, it argues that the bankruptcy

---

landlord was dilatory in seeking a remedy for the tenant's failure to pay.  *See In re Pudgie's Dev.*, 239 B.R. at 695-96 (citing cases).  The bankruptcy court made no such finding, and the record compels the conclusion that Goldman acted promptly.

court "properly executed Judicial Discretion," Appellee's Br. at 4, in not allowing a claim that it could not pay. But that argument goes to the decision to dismiss the case, which the Court will address next. In the meantime, it is difficult to avoid the conclusion that the bankruptcy court erred in not recognizing Goldman's claim as an administrative expense of the estate.

**Second,** Goldman argues that the bankruptcy court erred in not requiring Baby Blue to pay its administrative expense claim as a condition of dismissal or, in the alternative, converting the case to a Chapter 7 liquidation. 11 U.S.C. § 1112(b)(1) authorizes both options, and the decision is entrusted to the bankruptcy court's discretion. *See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co.*, 476 B.R. 60, 66 (E.D.N.Y. 2012). "A bankruptcy court abuses its discretion if its decision rests on an error of law or a clearly erroneous factual finding or cannot be located within the range of permissible decisions." *In re Murray*, 900 F.3d 53, 59 (2d Cir. 2018).

"Section 1112(b) requires the court to engage in a two-step process in determining whether to convert or dismiss a chapter 11 case." *In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 358 (Bankr. S.D.N.Y. 2001). "First, as a threshold matter, the court must determine whether cause exists either to convert or dismiss the case." *Id.* at 359. One valid cause is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

8

rehabilitation." 11 U.S.C. § 1112(b)(4)(A). Although the bankruptcy's court reasoning is not entirely clear on this point, the Court agrees with Baby Blue that the most likely reason is the practical one that Baby Blue simply could not successfully reorganize.

But a finding of cause is only the first step of the inquiry. "After the court finds that cause exists, it then must decide whether it is in the best interests of creditors to simply dismiss the case, or to convert it to chapter 7." *In re Hampton Hotel Invs., L.P.*, 270 B.R. at 359. Many factors can be relevant to that determination, including;

(1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal,

(2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted,

(3) whether the debtor would simply file a further case upon dismissal,

(4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors,

(5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise,

(6) whether any remaining issues would be better resolved outside the bankruptcy forum,

(7) whether the estate consists of a "single asset," [and]

9

(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

*Id.* at 359 (quoting *Collier on Bankruptcy*).  Not all of those factors are relevant in this case, but several stand out.  With a dismissal, Goldman loses its status as an administrative claimant; although it can also pursue its rights in a state-court landlord-tenant proceeding, its status would be that of any unsecured judgment creditor.  In addition, a Chapter 7 proceeding would theoretically allow the trustee to recover rent from the subtenant for the benefit of the estate.  Finally, as the bankruptcy court itself noted, the insider arrangement between Baby Blue and its subtenant is at least suggestive of a scheme to avoid creditors that would justify the need for a trustee to protect their interests; Goldman further argues that Baby Blue should not be allowed to enjoy the benefits of bankruptcy—principally the right to remain in possession of the premises for several months without paying rent—without the concomitant protections for creditors that a Chapter 7 proceeding would afford.

It may be true, as Baby Blue argues, that other factors favor dismissal.  It may also be true that Chapter 7 would ultimately serve Goldman no better than Chapter 11 or a state-court action.  But the bankruptcy court is better placed to make a reasoned decision based on the relevant factors.  For this reason, the Court

concludes that the bankruptcy court's failure to conduct the required analysis was an abuse of discretion requiring remand.[3]

### III

For the foregoing reasons, the Court reverses the bankruptcy court's order of dismissal and holds that Goldman is entitled to an administrative claim for unpaid post-petition, pre-rejection rent.  The case is remanded for a more fulsome consideration of the relevant factors favoring conversion to a Chapter 7 proceeding over dismissal, as well as any other appropriate proceedings consistent with this opinion.  The Court expresses no opinion on the outcome of those proceedings.

**SO ORDERED.**

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 22, 2024

---

[3]Goldman briefly argues that the bankruptcy court erred in allowing 100% of the trustee's administrative expense claim.  This is simply a reframed version of its main argument that its own claim for unpaid post-petition, pre-rejection rent should have been included.  It is, as noted, beyond serious dispute that "the landlord is paid with the other administrative claims on a pro rata basis."  *In re Pudgie's Dev.*, 239 B.R. at 693.